COMMONWEALTH *vs.* STEPHEN EDWARD RICHMOND.

Worcester.    November 1, 1976. — December 21, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, &
WILKINS, JJ.

*Evidence,* Photograph, Judicial discretion.

At a trial of indictments charging rape and murder in the first degree,
the judge erred in allowing the prosecutor to introduce in evidence
photographs of the victim which depicted gruesome post mortem
injuries not inflicted by the defendant. [565-566]

INDICTMENTS found and returned in the Superior Court
on March 12, 1975.

The cases were tried before *Keating,* J.

*Robert B. Shumway* for the defendant.

*Daniel F. Toomey,* Assistant District Attorney, for the
Commonwealth.

REARDON, J.    The defendant was convicted of murder
in the first degree and rape on indictments lodged against
him in the Superior Court in Worcester County and was
thereafter sentenced. He now brings an appeal under G. L.
c. 278, §§ 33A-33G. He has alleged a number of errors in
his assignment, none of which commends itself to our
attention save one. In that assignment he alleges that the
introduction in evidence of certain photographs resulted
in prejudicing his cause to the point where a reversal is
warranted. We agree.

A jury could have found that the defendant, having
raped and murdered the victim on January 11, 1975, left
her nude body in a snow bank where it was discovered on
January 16, 1975, by a passerby. At that time the body
was covered with snow when the witness saw a "big
Weimaraner just over the banking ... tugging on some-

thing." This turned out to be the face of a corpse which had been severely mutilated as a result, prior to the retrieval of the body by the State police. Subsequently pictures of the corpse, including the damaged head, were exhibited to the jury over objection and exception, and we have viewed them. There is no question that while certain of the injuries to the victim in the neck and head area were sustained before death, as testified by a pathologist, much of the injury depicted in the photographs was post mortem and not the result of the assault on the victim while living.

We have had occasion recently to review the law in this area in *Commonwealth* v. *Bys*, 370 Mass. 350, 360 (1976), and we there made reference to the fact that "[c]ounsel have cited no case in which this court has held that it is error to admit photographs or slides of the victim's body in the trial of an indictment charging an unlawful homicide by violence." We referred also to our prior comments on the "paucity, and perhaps the absence, of any such holding by this court." In *Commonwealth* v. *McGarty*, 323 Mass. 435, 438 (1948), on the argument that the sight of certain photographs would inflame the jury, we said, "A similar contention has often been made in homicide cases, but it has never been sustained where the photographs had evidential value upon a material matter." Repeated reference has been made in our cases to the discretion of the trial judge in admitting gruesome photographs. As we stated in *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279 (1962), "Whether such evidence was so inflammatory in nature as to outweigh its probative value and preclude its admission is a question to be determined by the trial judge in the exercise of his sound discretion." In the *Bys* case we stated that "a defendant who claims an abuse of that discretion assumes a heavy burden." *Id.* at 361. It is in light of the foregoing considerations that we recite what happened in this case.

When the question of admission of the photographs of the victim first arose, the judge indicated that he was prepared to exclude pictures of post mortem injuries (described by defense counsel as "[h]ere's a girl with her

entire face bitten away"). The judge then observed, "I may allow photographs that show her body, but anything that is going to show her face destroyed, I think is very prejudicial. I mean I think it would take a pretty sophisticated Jury not to be affected by that kind of photo. If you can show photos with her body bruised, I think that is good, but you're letting a lot of scurrilous stuff in on this face being eaten. That's hard to take." The judge at that point admitted the less offensive pictures but excluded one picture which was under discussion, indicating early awareness of the possible prejudicial effect of certain of the photographs.

In his opening the assistant district attorney stated that the witness who discovered the body could see dogs "tugging at something," that "[h]e could see that the dogs were chewing on the face of a female and all that was exposed was the face and that the body was completely buried in snow." In the colloquy prior to the admission of the photographs, when counsel for the defendant objected to their introduction, the judge remarked during a discussion at the bench, "How can we keep that head out? The head is horrible." The defense attorney renewed his objection to the introduction of the pictures on the basis that the injuries were "all post mortem injuries." On their admission the judge referred to the objection of the defense and told the jurors that they were to be related only to the testimony given by the pathologist, and that the pictures were offered to show those injuries which he had described "and only for that purpose and [had] nothing to do as far as the other injuries, with the guilt or innocence of this Defendant." Somewhat later in the trial, on the request by the prosecution to show the photographs to the jury, the counsel for the defendant again objected.

It appears that extensive testimony was given by the pathologist testifying for the prosecution on the ante mortem head injuries sustained by the victim. In sum this is a case where the evidential value of the photographs which went to the jury was overwhelmed by the prejudicial effect. See *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 817

(1973). The Commonwealth had a very strong case and, with the testimony of the pathologist, would not have been harmed had the pictures of the injuries to the victim after death not been exhibited to the jury as they were. As we stated initially we have never, so far as we know, upset a verdict on this type of error, and this opinion is not to be taken to indicate that we are likely to do so again, but there are limits to the employment of judicial discretion and those limits were exceeded in this instance.

*Judgments reversed.*