COMMONWEALTH *vs.* STEPHEN EDWARD RICHMOND.

Worcester. October 3, 1979. — January 21, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Homicide. Rape. Practice, Criminal,* Motion to suppress, Voluntariness of confession, Instructions to jury, Capital case. *Constitutional Law,* Assistance of counsel, Admissions and confessions, Waiver of constitutional rights, Search and seizure. *Waiver. Evidence,* Admissions and confessions. *Search and Seizure.*

At the retrial of a defendant, the judge had no obligation to conduct a hearing on the defendant's motion to suppress inculpatory statements; he was entitled to rely on the ruling made by the judge at the defendant's earlier trial. [558-559]

At a hearing on a defendant's motion to suppress inculpatory statements, evidence that he declined an opportunity to use a telephone to obtain a lawyer after he had expressed interest in exercising his right to counsel and that he then continued questioning police as to details of the crime about which he was being interrogated warranted a finding that he waived his right to counsel prior to making the statements. [559-560]

At a criminal trial, the judge did not err in failing to put the question of the voluntariness of the defendant's confession to the jury where the question of voluntariness was not raised by the evidence. [560-561]

At a criminal trial, the judge did not err in admitting in evidence a seriously incriminating letter written by the defendant to his sixteen year old girlfriend, which had been opened by the girl's mother and then delivered to the police, where there was no evidence that the police directed or encouraged the opening and where the mother was acting in the interests of her daughter, not the police, when she did so. [561-562]

At the trial of a defendant charged with rape, the judge's failure to charge the jury on assault and battery as a lesser included offense within the charge of rape did not cause grave prejudice to the defendant where a finding of simple assault and battery was not a reasonable possiblity on the evidence. [562-563]

INDICTMENTS found and returned in the Superior Court on March 12, 1975.

Following the decision of this court reported in 371 Mass. 563 (1976), the cases were tried before *O'Connor*, J.

*Hugh W. Samson* for the defendant.

*Daniel F. Toomey*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. This is the defendant's second appeal following his conviction of murder in the first degree and rape of a young woman in January, 1975. On the defendant's first appeal, we reversed the convictions because of the prejudicial introduction of certain photographs showing gruesome post mortem injuries to the victim caused by dogs. *Commonwealth* v. *Richmond*, 371 Mass. 563 (1976). We affirm the convictions and perceive no reason to exercise our authority under G. L. c. 278, § 33E, to reduce the defendant's sentence or to order a new trial.

1. The defendant argues that the trial judge should have held a voir dire hearing on his motion to suppress inculpatory statements that he made to the police. The judge at the first trial had held such a hearing and had suppressed some but not all of the defendant's statements.

The judge at the second trial had no obligation to conduct another hearing on the motion to suppress, particularly in this case where both counsel agreed that the evidence would be the same as that presented to the first judge. The situation was not substantively different from one in which a pretrial motion to suppress has been heard and acted on and the defendant renews the motion at trial. Although, in his discretion, a judge may consider the motion again, he has no duty to do so, and may rely on the pretrial ruling, even if made by another judge. See, effective July 1, 1979, Mass. R. Crim. P. 13 (a) (5), 378 Mass. 871 (1979).

The defendant argues further that, if the trial judge did not have to hold a hearing on his motion to suppress, the first judge erred in not suppressing his entire confession. We have considered the evidence offered before the first judge on the motion to suppress and his findings. The judge's subsidiary findings were warranted by the evidence, and, reaching our own conclusions on the application of constitu-

tional principles to the facts found (see *Commonwealth* v. *Santo,* 375 Mass. 299, 303 [1978]), we conclude that there was no violation of Miranda rights requiring the suppression of the defendant's inculpatory responses to a question from a police officer.

We summarize the facts found by the first judge. The defendant went voluntarily to the Worcester police headquarters. He admits that he was advised of his Miranda rights and, in his motion to suppress, indicates that he waived them, at least initially. When asked at the voir dire hearing what he understood these rights to be, the defendant recited the Miranda warnings almost verbatim. The police first took a signed, exculpatory statement from the defendant. After that, the defendant asked questions about the murder, the name of the victim, where her body was found, and whether it was clothed. He asked if he was a suspect and was told that he was. He then said, "I think I should get a lawyer." He was offered a nearby telephone to do so, but he replied "no" and continued asking questions, such as how the victim had died. He did call his employer to tell him that he would be late to work. Some time after that a police officer, without reiterating the Miranda warnings, asked him what he had done with one of the victim's shoes. At this point, the defendant broke down, said he had thrown the shoe on the roof of the gasoline station where he worked, admitted killing the victim, and said he was sorry.[1] The defendant then signed a written statement admitting his guilt.

The judge suppressed all statements, written and oral, made subsequent to the defendant's statement that he killed the victim and was sorry. The judge concluded that new Miranda warnings should have been given following the defendant's incriminating statement, but ruled that the statement itself did not have to be suppressed.

We commence our analysis of the defendant's claim that he was denied his constitutional right to counsel by acknowl-

[1] The shoe was found on the roof. The other shoe had been found at the scene of the crime.

edging that the right is a most important one. When an individual has indicated that he wants an attorney, normally all questioning must cease. *Miranda* v. *Arizona,* 384 U.S. 436, 473-474 (1966). The government has a heavy burden to demonstrate that the defendant knowingly and intelligently waived his right to counsel. *Commonwealth* v. *Watkins,* 375 Mass. 472, 485 (1978). However, in particular circumstances, an individual may waive his previously asserted desire to consult counsel. *Id.* at 484.

In this case, the government sustained its burden of showing that the defendant waived his right to counsel. The defendant expressed an interest in exercising his right to counsel at one point and was given an opportunity to use a telephone to obtain a lawyer. He declined that offer and it was he, not the police, who continued the questioning. He might have chosen to remain silent, but he pursued the subject of the investigation actively. In this respect, this case differs significantly from *Commonwealth* v. *Taylor,* 374 Mass. 426 (1978), where the police attempted to convince the defendant to continue talking after he had asserted his constitutional right to remain silent. In the circumstances of this case, the police did not have to give new Miranda warnings before asking him what he had done with the victim's shoe. *Commonwealth* v. *Watkins, supra* at 484.

2. The defendant argues that the judge should have put the question of the voluntariness of his confession to the jury, even in the absence of both a request for such an instruction and any objection to the charge as given. The defendant relies on *Commonwealth* v. *Harris,* 371 Mass. 462, 469-471 (1976). A judge must give such an instruction on his own motion only when the voluntariness of a defendant's confession is a live issue at trial. *Commonwealth* v. *Alicea,* 376 Mass. 506, 522-523 (1978). See *Commonwealth* v. *Chung,* 378 Mass. 451, 456-458 (1979); *Commonwealth* v. *Williams,* 378 Mass. 217, 227 (1979); *Commonwealth* v. *Harris, supra* at 471 n.3. The question of the voluntariness of the defendant's confession was not raised at any time. The motion to suppress the defendant's confession was not

based on such a claim. There was no evidence that the defendant was under the influence of alcohol or any other drug or that the police engaged in physical coercion, threats, or duress. Nor was there psychiatric evidence bearing on the question of voluntariness. See *Commonwealth* v. *Chung, supra* at 458 n.8. The challenge to the admissibility of the confession was founded only on a claim of the violation of Miranda rights. The defendant does not argue that the Miranda issue should have been submitted to the jury.

3. The defendant challenges the admission of a seriously incriminating letter which he wrote while he was being held on the charges for which he was ultimately convicted. The letter was addressed to his former girlfriend, who was then sixteen years old, at her parents' residence. Her father picked up the letter at the family's post office box and gave it to his wife. She in turn called the local chief of police to ask if she could open the letter. The chief of police, who knew that the defendant was "a prime suspect" in the murder investigation, told the mother that she could open the letter if she thought it was in her daughter's interest to do so. The trial judge found that the police did not solicit or procure the opening of the letter and that there was no arrangement between the police and any third party for obtaining incriminating statements from the defendant. The mother, who testified that she thought she would have opened the letter even if the chief of police had told her not to, did open the letter, read it, and delivered it to the chief of police.

The defendant claims that the opening of the letter was an unlawful, warrantless search in violation of Fourth Amendment rights. The argument fails because there is no evidence of State action in the opening of the letter. The police did not direct or encourage the opening, and most significantly, the mother was acting in the interests of her daughter, and not on behalf of the police, when she did so. In such a case the Fourth Amendment does not come into

play.[2] *Commonwealth* v. *Weiss,* 370 Mass. 416, 419 (1976). *Burdeau* v. *McDowell,* 256 U.S. 465, 475 (1921). See *United States* v. *Clegg,* 509 F.2d 605, 609 (5th Cir. 1975).[3]

4. Finally, the defendant contends that the judge should have instructed the jury on assault and battery as a lesser included offense within the charge of rape. We accept the principle that one may be convicted of assault and battery on an indictment which charges rape (see *Commonwealth* v. *Creadon,* 162 Mass. 466, 467 [1894]); *Commonwealth* v. *Eaton,* 2 Mass. App. Ct. 113, 118 [1974]), and that an instruction concerning the lesser included offense should be given, on request, unless the evidence would not warrant a finding that the defendant was guilty of that offense (see *Commonwealth* v. *McKay,* 363 Mass. 221, 228 [1973]; *Commonwealth* v. *Campbell,* 352 Mass. 387, 392 [1967]).

Here, the defendant did not request an instruction on assault and battery, nor did he object to the judge's omission of such an instruction. In this circumstance, we would consider the argument only under our authority pursuant to G. L. c. 278, § 33E, and would reverse only on a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Roberts,* 378 Mass. 116, 122-123 (1979). *Commonwealth* v. *Burnett,* 371 Mass. 13, 16 (1976).[4]

---

[2] In light of this conclusion, we need not pass on the question whether the parents had a lawful right under Federal statutes and postal regulations to open a letter addressed to their sixteen year old daughter or whether the defendant had any legitimate expectation of privacy in the letter once he mailed it to his former girlfriend at her parents' home, knowing that her family did not approve of him.

[3] This case is unlike those on which the defendant relies because in those cases the search was conducted solely for the purpose of aiding a government investigation. See *Gambino* v. *United States,* 275 U.S. 310, 317 (1927); *Corngold* v. *United States,* 367 F.2d 1, 5 (9th Cir. 1966). Cf. *Commonwealth* v. *Mahnke,* 368 Mass. 662, 678 n.23 (1975), cert. denied, 425 U.S. 959 (1976).

[4] The defendant's objection relates specifically to the charge on the indictment for rape and thus does not fall readily within the provisions of G. L. c. 278, § 33E, which statute concerns convictions of murder on indictments charging murder in the first degree. However, any error in the

Clearly the defendant was not prejudiced by the absence of a charge on assault and battery. It is arguable that the evidence did not warrant an instruction on assault and battery. The defendant testified on direct examination that he closed his arm around the victim, and she dropped to the ground. He guessed that was when she died. A battery which causes death is manslaughter (*Commonwealth* v. *Campbell, supra* at 397), and the jury were properly instructed on the crime of manslaughter, although not with reference to battery. Without deciding that an instruction on assault and battery would not have been required if requested, we conclude that a finding of simple assault and battery was not a reasonable possibility and certainly no "grave prejudice" occurred to the defendant from the omission of a charge on assault and battery.

In assessing the likelihood of prejudice and in fulfilling our obligation under G. L. c. 278, § 33E, we may rightly consider the strength of the evidence against the defendant. As we noted when the matter was here before, the Commonwealth had a very strong case. *Commonwealth* v. *Richmond,* 371 Mass. 563, 566 (1976).

*Judgments affirmed.*

---

charge concerning the rape indictment might have affected the murder conviction because the jury could have based that conviction on the principle of felony-murder. Even if the principles of G. L. c. 278, § 33E, were inapplicable here, we might reverse a conviction because there was a substantial risk of a miscarriage of justice, even though no objections were made to the charge. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). Because it is unimportant to the result, we do not pause to consider differences between the standards of § 33E and the seemingly stricter standard of the *Freeman* case.