## COMMONWEALTH vs. WILLIE ROBINSON.

Hampden.    June 8, 1982. — November 3, 1982.

Present: BROWN, ROSE, & GREANEY, JJ.

*Insanity. Homicide. Evidence,* Of sanity, Photograph. *Practice, Criminal,* Instructions to jury.

At a trial on indictments charging first degree murder and assault and battery with a dangerous weapon, the judge properly denied the defendant's motion for a required finding of not guilty by reason of insanity. [594-596]

At a murder trial, the judge acted within his discretion in admitting in evidence, as probative of the issue of extreme atrocity and cruelty, black and white photographs of the victim's body depicting surgical incisions, along with stab wounds, as well as tubes which had been inserted in the victim's throat in an attempt to restore breathing immediately after the attack. [596-597]

At a murder trial at which the defendant offered a theory of diminished capacity not amounting to legal insanity as a basis for reducing the charge to manslaughter, there was no error in either the judge's refusal to allow the defendant's psychiatrists to answer questions designed to elicit expert opinions on the defendant's capacity to harbor malice aforethought, or in his refusal to instruct the jury regarding the defendant's mental capacity to commit the act of killing with malice aforethought. [597-598]

The judge at a murder trial did not err in refusing to give a manslaughter instruction where no evidence was presented from which the jury could find a causal connection between the anger allegedly provoked by the defendant's wife having thrown acid on him and his attack on the victim. [598-600]

INDICTMENTS found and returned in the Superior Court Department on July 15, 1980.

The cases were tried before *John F. Murphy, Jr.,* J.

*John F. Donahue* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

Rose, J. The defendant was indicted for the murder of Anthony Lombardi and five counts of assault and battery with a dangerous weapon. Following a jury trial, at which the defendant pleaded not guilty and interposed a claim of insanity, the defendant was convicted of second degree murder and of all five counts of assault and battery. The defendant argues on appeal that the trial judge erred in: (1) denying the defendant's motion for a required finding of not guilty by reason of insanity; (2) admitting certain photographs in evidence; (3) refusing to allow psychiatric testimony in the form of expert opinion on the defendant's capacity to harbor malice aforethought; and (4) refusing to instruct the jury that they could find the defendant guilty of manslaughter. Finding no error, we affirm the convictions.

It was undisputed at trial that on the morning of June 23, 1980, the defendant attacked several people with a knife in the emergency room of the Baystate Medical Center in Springfield, and in the adjoining parking lot. Five people were wounded in the attack, and a five and one-half year old boy, Anthony Lombardi, was fatally stabbed.

Briefly, the evidence surrounding the episode is as follows. The defendant lived with his wife and two daughters in Springfield. He had been employed until 1975, when he suffered a stroke. He never returned to work. In 1976 he was operated on to alleviate his condition and, thereafter, continued to receive medical attention for high blood pressure and depression. He has been a patient at the Hampden County Medical Center, where he was treated on an out-patient basis by a Dr. Harrington for depression following his stroke.

On the day before the attacks, the defendant's sisters took him to the emergency room of the Baystate Medical Center. The defendant's relatives had been concerned about his behavior which, according to their testimony, included statements to them that his wife "wants me to kill her." The defendant was seen at approximately 6:15 p.m. by a staff doctor who told him to increase the dosages of Valium and Elavil he was taking and to return in the morning if he

was not better. The hospital was unable to reach Dr. Harrington, the psychiatrist who treated the defendant at the Hampden County Medical Center.

The defendant drove to New Hampshire with his sister later that night to pick up her granddaughter. He returned home about 4:00 A.M. and went to bed. Some time after he got up from bed later that morning, he approached the bathroom, where his wife was combing their granddaughter's hair. Without warning, he threw some drain cleaner containing acid on them. Mrs. Robinson testified that she threw up her arm and some of the caustic liquid spilled on the defendant. He then pulled a knife from his back pocket and began chasing and stabbing at his wife. She escaped with her granddaughter to a neighbor's house.

The defendant next walked about a mile to his nephew's house, where he stated that his wife had thrown acid on him. The defendant's nephew could not convince the defendant to go to the hospital, but he took the defendant to see a friend. After the friend convinced the defendant to go to the hospital, the defendant's nephew drove him to the emergency room at the Baystate Medical Center.

When they arrived at the hospital, the defendant jumped out of the car and his nephew drove off to park the car. The defendant entered the emergency room, walked over to a chair occupied by one of the victims, grabbed her from behind, and began stabbing her. In the ensuing melee he stabbed and chased other individuals around the emergency room. No one heard him speak. He only "grunted" during the attacks. When he spotted Rose Lombardi and her son running away from the emergency room, he chased Mrs. Lombardi in the parking lot and stabbed her in the left side. Then he saw her son, caught him and repeatedly stabbed him in the back, neck and throat. When he was approached by George Bishop, a security guard, the defendant shouted, "I'm the King, I'm the King." Mr. Bishop testified that the defendant said something to the following effect: "I was here for treatment last night and you threw me out. Now I've done it, what are you going to do about it?" At Bishop's

request, the defendant then dropped his knife and was taken into custody.

1. The defendant assigns as error the trial judge's denial of the defendant's motion for a required finding of not guilty by reason of insanity. The defendant correctly states that once the defendant raises the issue of insanity, the Commonwealth bears the burden of proving the defendant's sanity at the time of the crime beyond a reasonable doubt. *Commonwealth* v. *Kostka,* 370 Mass. 516, 526 (1976). However, this burden does not require the Commonwealth to provide expert psychiatric testimony on the issue of criminal responsibility. *Commonwealth* v. *Cole,* 380 Mass. 30, 35-36 (1980). Nor does it require the jury to believe uncontradicted expert opinion on behalf of a defendant. *Commonwealth* v. *Gould,* 380 Mass. 672, 679 (1980). *Commonwealth* v. *Shelley,* 381 Mass. 340, 346 (1980). "The jury are not compelled to believe any such testimony or opinions, and the court cannot order them to do so by directing them to return verdicts of not guilty by reason of insanity." *Commonwealth* v. *Smith,* 357 Mass. 168, 178 (1970), cited with approval in *Commonwealth* v. *Walker,* 370 Mass. 548, 577-578 n.20, cert. denied, 429 U.S. 943 (1976).

The jury may consider what has been termed the "presumption of sanity" in deciding whether a given defendant is criminally responsible. "In cases where the question of insanity is raised, as in the instant case, the facts underlying the presumption and the inference that may be drawn from those facts provide a basis for the jury to determine that the defendant was sane beyond a reasonable doubt at the time the crime was committed." *Commonwealth* v. *Kostka,* 370 Mass. at 530. The "presumption of sanity" is really a shorthand expression for the fact that the majority of people are sane, and the related probability that any particular person is sane. *Ibid.*

Furthermore, the record in the instant case is not totally devoid of any evidence that the defendant was sane at the time the crimes were committed. There was undisputed

testimony as well as medical records indicating that the defendant had gone to the hospital the night before the attack and was refused admittance as an in-patient. Bishop, a security guard, testified that the defendant stated at the time of the attacks: "I was here for treatment last night and you threw me out. Now I've done it, what are you going to do about it?" The defendant stated at trial that he was angry at the doctor for refusing to admit him. There was testimony presented that the defendant was "very quiet" after he dropped the knife at the request of Bishop and that he remained quiet on the way to the police station. There was also testimony from the defendant's nephew that when he saw the defendant approach him with a knife the nephew said, "No, no," and that the defendant turned away without harming him.

The jury also had conflicting testimony to resolve regarding the defendant's condition on the day before the attacks. Both the defendant's wife and his sister stated at trial that the defendant was "drooling at the mouth" the day before the attacks. However, the physician who examined the defendant in the emergency room the evening before the attacks testified that he did not observe the defendant drooling, and that he was not told of any drooling by either the defendant or the defendant's sister. Furthermore, the defendant's sister, who was with the defendant at the hospital on the night before the attacks, testified that while they were with the doctor the defendant stated that his heart had stopped beating that day and that he had died. The doctor testified that the defendant stated that his heart had skipped a beat that day, and that he was afraid that he might have another stroke. The sister also testified that, while the doctor was present, the defendant stated that he wanted to kill his wife. The doctor denied hearing any such statement.

Furthermore, the jury is the final judge of the credibility of expert evidence on insanity. *Commonwealth* v. *Smith,* 357 Mass. at 178. They may disbelieve the defendant's experts, for example, if they feel that the psychiatric examination of a defendant was too brief or too remote in time from

the incident. *Commonwealth* v. *Kostka,* 370 Mass. at 535-536. In the instant case it was brought out in cross-examination that one of the defendant's expert witnesses did not have all of the defendant's hospital records and did not know all the details of the attack. Neither of the defendant's two expert witnesses was aware in forming his medical opinion that the defendant had said anything significant other than "I'm the King" at the time of the attack. Furthermore, the two psychiatrists were not in complete agreement on all aspects of their diagnoses. The jury could have taken all of this into consideration in reaching their verdict, as well as the fact that the defendant did not have a history of hospitalizations for mental illness. The judge properly refused to grant the defendant's motion for a required finding of not guilty by reason of insanity.

2. At the trial, the Commonwealth offered in evidence three black and white photographs of Anthony Lombardi which were taken before the autopsy. The photographs depicted a rear, side, and front view of the victim's body in the condition it was in after leaving the emergency room. Objection was made to the photographs on the basis that they were inflammatory and that they displayed surgical incisions, along with the stab wounds, as well as tubes which had been inserted into the victim's throat in an attempt to restore breathing immediately after the attack. The trial judge ruled that the photographs were admissible and probative of the issue of extreme atrocity and cruelty which was the basis of the Commonwealth's first degree murder theory. We find no error.

It has long been established that in cases being tried on the basis of murder by extreme atrocity or cruelty, photographs indicating the type and extent of injuries inflicted may properly be admitted. *Commonwealth* v. *Bys,* 370 Mass. 350, 358 (1976) and cases cited. Moreover, if photographs possess evidential value on a material matter, they will not be inadmissible because they are inflammatory. *Commonwealth* v. *Stewart,* 375 Mass. 380, 385 (1978). *Commonwealth* v. *Fratus,* 385 Mass. 551, 553 (1982).

Whether such photographs should be admitted is a matter within the discretion of the trial judge. *Commonwealth* v. *Stirling*, 351 Mass. 68, 72 (1966). *Commonwealth* v. *Stewart, supra* at 385.

The fact that the photographs admitted in this case depicted some changes in the body resulting from emergency treatment does not render them inadmissible. In *Commonwealth* v. *Dalton*, 385 Mass. 190, 193 (1982), the Supreme Judicial Court held that the trial judge did not abuse his discretion in admitting photographs taken after an autopsy. See *Commonwealth* v. *Bastarache*, 382 Mass. 86, 105-106 (1980). In *Commonwealth* v. *Richmond*, 371 Mass. 563 (1976), cited by the defendant, photographs were admitted of the body of a murder victim which had been bitten away by dogs some time after the crime had been committed. The *Richmond* case presented an extreme situation in which the limits of judicial discretion had clearly been exceeded. It is not dispositive of the instant case in which the photographs do not display gross changes in the victim's condition. There was no abuse of discretion here.

3. The defendant also raises as error the fact that the trial judge refused to allow the defendant's psychiatrists to answer questions designed to elicit expert opinions on the defendant's capacity to harbor malice aforethought. In addition, the defendant cites as error the trial judge's refusal to instruct the jury regarding the defendant's mental capacity to commit the act of killing with malice aforethought.

The basis of the defendant's argument rests upon an extension of the holding in *Commonwealth* v. *Gould*, 380 Mass. 672 (1980), in which expert testimony concerning a defendant's capacity to deliberately premeditate murder was sanctioned. In the *Gould* case, the Supreme Judicial Court clearly stated that its holding only enlarged the consideration of mental impairment to the issue of deliberate premeditation required for murder in the first degree. Otherwise mental impairment is only to be considered on the issue of criminal responsibility in general. See *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967). "Permitting

a jury to consider whether a defendant's mental illness affected his capacity to deliberately premeditate is not tantamount to adopting a doctrine of diminished responsibility." *Commonwealth* v. *Gould, supra* at 682. In *Commonwealth* v. *Lannon,* 364 Mass. 480, 485-486 (1974), the court specifically rejected the argument advanced by the defendant in this case. Nothing in the *Gould* case implies a contrary result.

The trial judge properly allowed psychiatric testimony of the type specified in the *Gould* case and properly refused to admit expert opinion on the defendant's mental capacity to harbor malice aforethought. Furthermore, the judge properly charged the jury on the element of malice aforethought. See *Commonwealth* v. *Starling,* 382 Mass. 423, 427-428 (1981).

4. The defendant also takes issue with the judge's failure to instruct the jury on manslaughter. The defendant raises two distinct theories in support of a manslaughter charge: (1) that the defendant was provoked by the intense pain of the acid burns on his body; and (2) that the defendant acted without malice due to a psychotic episode.

The second basis raised for the manslaughter instruction, in effect, restates the defendant's contentions that the judge should have instructed the jury to consider the capacity of the defendant to harbor malice aforethought. The defendant assigns as error the judge's refusal to allow the jury to consider mental impairment in reducing a charge of murder to one of manslaughter. As we have just discussed, however, the law in this Commonwealth does not embrace a theory of diminished capacity as a basis for reducing murder to manslaughter.

We turn, then, to the defendant's contention that there was adequate evidence of provocation to support a finding of manslaughter. The defendant correctly points out that if any view of the evidence, resolving all reasonable inferences in favor of the defendant, supports a finding of manslaughter, then a manslaughter instruction is required. *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 745-746 (1975).

*Commonwealth* v. *Burke,* 376 Mass. 539, 542 (1978). To omit such a required instruction is reversible error. *Commonwealth* v. *Campbell,* 352 Mass. 387, 392 (1967).

The defendant argues that testimony was presented on the basis of which the jury could have found that the defendant's wife threw acid on him. Assuming this as true, however, a manslaughter charge regarding the defendant's attack on a victim who had no connection with the throwing of acid is not required. Voluntary manslaughter is "a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Walden,* 380 Mass. 724, 727 (1980) (quoting from *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 [1931]). "A verdict of voluntary manslaughter requires the trier of fact to conclude that there is a causal connection between the provocation, the heat of passion, and the killing." *Commonwealth* v. *Schnopps,* 383 Mass. 178, 180-181 (1981).

No evidence was presented from which the jury could find a causal connection between the anger allegedly provoked by the wife and the attacks against six other individuals which would support a manslaughter conviction. Provocation must come from the deceased to warrant such a charge. "If death, though wilfully intended, was inflicted immediately after *provocation given by the deceased,* supposing that such provocation consisted of a blow or an assault, or other provocation on his part, which the law deems adequate to excite sudden and angry passion and create heat of blood, this fact rebuts the presumption of malice; but still, the homicide being unlawful, because a man is bound to curb his passions, is criminal, and is manslaughter." *Commonwealth* v. *Young,* 326 Mass. 597, 601 (1950) (emphasis supplied) (quoting from *Commonwealth* v. *Webster,* 5 Cush. 295, 305 [1850]). The judge properly refused to give the jury an instruction on manslaughter since it would have been error to charge on it with no supporting evidence. *Commonwealth* v. *Caine,* 366 Mass. 366, 374-375

(1974).  *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980).

The jury had the opportunity to consider whether the burning acid triggered a "mental disease or defect" such that the defendant lacked "substantial capacity either to appreciate the criminality . . . of his conduct or to conform his conduct to the requirements of law." *Commonwealth* v. *McHoul*, 352 Mass. at 546-547 (quoting from Model Penal Code § 4.01, at 66 [Proposed Official Draft 1962]).  The jury were properly charged on the possibility of finding the defendant not guilty by reason of insanity.

*Judgments affirmed.*