## COMMONWEALTH vs. HENRY L. MEINHOLZ, JR.

Plymouth. May 1, 1995. - June 19, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Evidence*, Photograph. *Homicide. Practice, Criminal*, Instructions to jury, Capital case.

At a murder trial, photographs of the victim's body were relevant on the issues of extreme atrocity or cruelty, deliberate premeditation and consciousness of guilt, and the judge properly admitted them in evidence. [635-636]

At a murder trial the judge correctly instructed the jury on the defendant's mental impairment as a factor in their determination whether deliberate premeditation or extreme atrocity or cruelty existed nor was there error in the judge's instruction on the result of a verdict of not guilty by reason of insanity. [637-638]

No reason appeared for this court to exercise its power under G. L. c. 278, § 33E, to reduce a verdict of first degree murder. [638]

INDICTMENT found and returned in the Superior Court Department on November 20, 1990.

The case was tried before *Cortland A. Mathers*, J.

The case was submitted on briefs.

*Jack M. Atwood* for Henry L. Meinholz, Jr.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury convicted the defendant of murder in the first degree by reason of deliberately premeditated malice aforethought, committed with extreme atrocity or cruelty, and of felony-murder. In this appeal, the defendant contends that: (1) the judge erred when he allowed in evidence unduly prejudicial photographs; and (2) the jury instructions were erroneous. We affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E (1992 ed.).

There was evidence from which the jury could have found that around 5:30 P.M. on Saturday, September 15, 1990, the victim's mother realized that her thirteen year old daughter (victim) was missing. Eleven days later, after an extensive search, the victim's body was found buried in the defendant's cellar. The body was completely surrounded by a plastic sheet which was twisted in a cord-like fashion encircling her neck. There also was a rope tightly wrapped around the victim's upper chest. Another piece of cord tied her left wrist around her chest. The victim was wearing a T-shirt and a bra that was above the level of her breasts. Later that day, the victim's body was taken to the hospital to be autopsied. Although no semen was found,[1] there were multiple contusions on both sides of the victim's inner thighs that were consistent with a sexual assault. There were also multiple blunt force contusions to the victim's face, scalp, neck, collarbone, right knee, both lower legs, the right foot, the right hip, and a large contusion on the lower back. There were also abrasions on the victim's knees consistent with being dragged across a concrete floor. Band-like contusions were discovered on both ankles and on her right wrist that were consistent with a ligature being tied around the ankles and wrist. All of the above described injuries were inflicted while the victim was still alive. The actual cause of death was asphyxia and multiple blunt force injuries to the head. When the victim's body was ultimately located, it appeared that she had been dead from nine to eleven days.

Although the defendant initially aided in the search for the victim, he eventually became a suspect in the victim's murder. On September 19, 1990, the police began to search all of the buildings on the street where both the victim and the defendant lived. When the defendant agreed to open his locked garage, the officers immediately noticed a strong odor of paint. When the officers observed an area of fresh red

[1]The medical examiner testified that it is generally accepted "in the field" that semen and seminal fluid will not be detectable after twenty-four to thirty-six hours.

paint on the garage floor and beams, the defendant told them that he had painted the floor and the beams because his wife recently hit one of the beams with her automobile and he wanted her to be able to see them more clearly. Although the officers found no evidence at that time, their interest in the defendant was piqued. Eventually the police and the Federal Bureau of Investigation began to question the defendant about the victim's disappearance. After the defendant's wife consented to a search of their house, the officers discovered the victim's body in the cellar.

At trial, the defendant admitted that he had killed the victim. The defendant testified that "a voice" said "Kill her," so he did. He stated that he covered her face with a blanket and pressed down on her face and that, to make sure that she was dead, he submerged her head in a dishpan of water to see if there were any "bubbles in the water." After confessing to burying the victim in his cellar, the defendant admitted that he knew what he did was wrong, but that he had to do it because the "voice" told him to do it.

1. *Admission of the photographs.* The defendant contends that it was error to admit photographs depicting the victim's body being unearthed from its grave and autopsy photographs because the photographs were highly inflammatory and not necessary to the resolution of a contested fact. We disagree. The admission of photographs is committed to the sound discretion of the trial judge, and we have rarely reversed a conviction because of the introduction of photographs of a victim. See *Commonwealth* v. *Nadworny*, 396 Mass. 342, 366 (1985), cert. denied, 477 U.S. 904 (1986). See also *Commonwealth* v. *Simmons*, 419 Mass. 426, 430-431 (1995). Moreover, "[i]t is well settled in a case such as the present one, in which the defendant is accused of committing murder with extreme atrocity or cruelty and with premeditation and deliberation, that photographs indicating the force applied and portraying the injuries inflicted may properly be admitted on the issue of whether the murder was committed with extreme atrocity or cruelty, as well as on the issue of premeditation and deliberation. *Commonwealth* v.

*Bys*, 370 Mass. 350, 358 (1976), and cases cited (extreme atrocity or cruelty). *Commonwealth* v. *Sielicki*, 391 Mass. 377, 382 (1984) (premeditation and extreme atrocity). It is also well settled that, if the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome or may have an inflammatory effect on the jury.' *Commonwealth* v. *Bys, supra.*" *Commonwealth* v. *Ramos*, 406 Mass. 397, 406-407 (1990). "Whether the photographs were 'so inflammatory in nature as to outweigh [their] probative value and preclude [their] admission is a question to be determined by the trial judge in the exercise of his sound discretion.' " *Id.* at 407, quoting *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279, cert. denied, 371 U.S. 852 (1962). In this case, some of the photographs illustrate how the victim's body was encased in plastic and tied up with rope before being buried in the defendant's cellar. Other photographs depict the victim's body at the time of the autopsy and were used by the medical examiner to demonstrate the difference between discolorations caused by a blunt object striking the victim's body and discolorations resulting from decomposition. Therefore, the photographs were relevant and admissible within the judge's discretion on the issues of the defendant's extreme cruelty or atrocity, his deliberate premeditation, and his consciousness of guilt. See *Commonwealth* v. *Lawrence*, 404 Mass. 378, 389-390 (1989) (photographs depicting manner in which body found relevant to issue of extreme atrocity or cruelty and to aid with interpreting medical examiner's testimony); *Commonwealth* v. *Nadworny, supra* at 366-367 (photographs relevant to illustrate state in which body found and to assist jury in understanding pathologist's testimony that decomposition prevented establishing precise cause and time of death).[2]

---

[2]The defendant's reliance on *Commonwealth* v. *Richmond*, 371 Mass. 563 (1976), is misplaced. In that case, the judge admitted photographs of the victim's face, depicting it after it had been torn away by dogs. This court reversed the conviction because the prejudicial photographs depicted the victim's postmortem injuries, rather than antemortem injuries sus-

2. *Jury instructions.* The defendant contends that the judge failed to instruct the jury properly that, if they found mental incapacity on the part of the defendant, they could then find that there was no deliberate premeditation or extreme atrocity or cruelty, thereby reducing the verdict to murder in the second degree. The judge charged the jury that "[y]ou have heard evidence in this case that the defendant may have been suffering from a mental impairment at the time he is alleged to have performed certain acts. You may consider the defendant's mental condition on the day in question, including any mental impairment, if any, in determining whether or not the Commonwealth has proved beyond a reasonable doubt that the defendant acted with deliberate premeditation. . . . Furthermore, you may consider the defendant's mental condition on the day in question, including any mental impairment, if any, in determining whether or not the defendant specifically intended to kill the victim or specifically intended to inflict grievous bodily harm on her, both of which are bases for a finding of malice aforethought. If the Commonwealth has proven beyond a reasonable doubt that the defendant had the specific intent to kill or to grievously injure the victim, the defendant's mental impairment, if any, does not excuse or justify his actions." After properly instructing the jury on other elements of the crimes charged including extreme atrocity or cruelty and felony-murder, the judge properly instructed the jury on the impact of the defendant's mental impairment, if any, on each of these elements. The judge also instructed that, "in order to prove murder in the second degree as distinguished from murder in the first degree, the Commonwealth is not required to prove either deliberate premeditation or extreme atrocity or cruelty." Given that the judge had properly charged the jury that a defendant's mental impairment is a factor to be weighed in the jury's consideration whether de-

---

tained by the victim as a result of the assault. *Id.* at 565-566. This is not such a case because here the photographs portray how the victim was buried and the injuries sustained by the victim while still alive.

liberate premeditation or extreme atrocity or cruelty existed, *Commonwealth* v. *Gould*, 380 Mass. 672, 683, 685 (1979), he was not required to instruct that sufficient mental incapacity can reduce first degree murder to second degree murder. His instruction that the critical distinction between first degree murder and second degree murder is the existence of deliberate premeditation or extreme atrocity or cruelty amounts to the same thing. This is all that was required.

The defendant also contends that the judge's instruction on the results of a verdict of not guilty by reason of insanity was erroneous and compounded the error. We have said, however, that "it is best to entrust jurors with a knowledge of the consequences of a verdict of not guilty by reason of insanity." *Commonwealth* v. *Callahan*, 380 Mass. 821, 827 (1980), quoting *Commonwealth* v. *Mutina*, 366 Mass. 810, 821 (1975). We conclude there was no error in the charge. See *Commonwealth* v. *Callahan*, *supra* at 826-828 (discussing similar charge).

3. *Review pursuant to G. L. c. 278, § 33E.* The evidence that the defendant lured the victim into his garage, tied her up, and raped her before killing her by suffocation amply supports the finding of deliberate premeditation. The circumstances of death, including the rape and the multiple injuries, support the finding of extreme atrocity or cruelty and felony-murder. Moreover, the issue of the defendant's mental illness, if any, was presented to the jury and the jury were fully instructed on the impact of the defendant's mental disease on the issue of deliberate premeditation and extreme atrocity or cruelty. Although the defendant presented no expert testimony on the issue of mental incapacity, the record makes clear that counsel was faced with a difficult tactical choice exacerbated by the strong, if not overwhelming, case against the defendant and last minute decisions by the defendant and his wife that affected their testimony.

For these reasons, we decline to exercise our power under G. L. c. 378, § 33E.

*Judgment affirmed.*