COMMONWEALTH *vs.* WAYNE D. PARKER.

Plymouth. December 3, 1991. - April 7, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Motion to suppress. *Evidence,* Admissions and confessions, Expert opinion.

At the retrial of a murder indictment, the defendant was not entitled to a rehearing on his motion to suppress evidence where he raised no new issues and the applicable law had not changed. [355-356]

At the retrial of a murder indictment, the judge properly denied the defendant's motion to amend his motion to suppress his confession, in order to raise the issue of involuntariness based on mental illness, where the defendant did not file a supporting affidavit as required by Mass. R. Crim. P. 13 (a) (2). [356-357]

At the retrial of a murder indictment, the judge did not err in refusing to conduct a hearing before trial on the issue of the voluntariness of the defendant's confession where he reasoned that the issue of voluntariness had been determined at the first trial and where the issue ultimately was submitted to the jury on proper instructions on the basis of the evidence presented at trial. [357-358]

The record of a murder trial did not support the defendant's contention that the judge improperly curtailed the testimony of the defendant's expert witness. [358-359]

The evidence at the trial of a murder indictment was sufficient to support the jury's finding of deliberate premeditation on the part of the defendant at the close of the Commonwealth's case, at the close of all the evidence, and after the jury was discharged. [359-360]

INDICTMENT found and returned in the Superior Court Department on May 30, 1984.

After review reported in 402 Mass. 333 (1988), pretrial motions were considered by *William H. Carey,* J., and the case was retried before *John M. Xifaras,* J.

*Roger Witkin* for the defendant.

*Mary O'Sullivan Smith*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On March 13, 1990, the defendant, Wayne D. Parker, was convicted of murder in the first degree, see G. L. c. 265, § 1 (1990 ed.), and unarmed robbery, see G. L. c. 265, § 19 (*b*) (1990 ed.).[1] The defendant appeals from his murder conviction, challenging (1) the denial of his request for a hearing to determine whether his confession was involuntary due to mental illness; (2) the curtailment of the testimony of his expert witness; and (3) the denial of his motions for a required finding of not guilty on so much of the indictment as alleged murder in the first degree. The defendant further requests that we review and revise his murder conviction pursuant to our power under G. L. c. 278, § 33E (1990 ed.). There was no error. On review of the record of the case, we perceive no reason to revise the murder conviction. We affirm.

1. *Facts.* The evidence of the circumstances of the victim's death and the defendant's confession was essentially the same at both trials.[2] We need not repeat the evidence, as it has been set forth in our earlier opinion. *Parker I, supra* at 335. We note only those additional facts that pertain to the defendant's present appeal.

---

[1] The defendant was convicted of the same crimes in 1985. At the same trial, his brother, David J. Parker, was convicted of murder in the first degree and larceny from the person. This court reversed the judgments on grounds not now in issue and remanded the cases to the Superior Court for a new trial. See *Commonwealth* v. *Parker*, 402 Mass. 333, 345 (1988) (*Parker I*). The defendant and his brother were then tried separately. The instant case concerns only Wayne D. Parker, and the record before us does not reveal the fate of David J. Parker. Also, at this trial, unlike *Parker I*, the defendant was convicted of murder in the first degree solely by reason of deliberate premeditation. As to the conviction of unarmed robbery, the defendant raises no issue on appeal. Thus, we do not consider that conviction on appeal. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[2] In the second trial, the defendant and the Commonwealth introduced testimony as to the mental health of the defendant at the time of the killing and of the confession.

2. *The defendant's confession.* After voluntarily accompanying police officers to the Halifax police station on May 10, 1984, and after signifying his understanding of the explanation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966),[3] the defendant confessed that he and his brother had killed the victim. The defendant agreed to repeat his confession on videotape. See *Parker I, supra* at 337-338. Prior to his first trial, the defendant moved to suppress his statements. The motion judge denied the motion after determining that the defendant had waived his rights freely and intelligently and that his confessions were voluntary. After a thorough review of the facts pertaining to these confessions in *Parker I, supra* at 337-342, we noted our agreement with this ruling.[4]

Prior to the second trial, the defendant filed a new motion to suppress his confessions. In this motion he raised the same issues that he had presented in his unsuccessful motion prior to the first trial. The defendant then filed a motion to amend his motion to suppress, to assert that his statements were involuntary due to mental illness. See Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979).[5] The motion judge refused to conduct a hearing and denied both motions. The judge reasoned that the defendant's claim of involuntariness had been considered fully and rejected by another Superior Court judge and by this court.[6] The defendant appeals from the denial of his request for a hearing on the motion.

---

[3] The defendant makes no claim on appeal that the police failed to inform him of his Miranda rights. Rather, the question he seeks to present is whether mental illness left him unable to waive his rights voluntarily and to make a statement.

[4] We reached and discussed the question of the admissibility of the defendant's confessions in anticipation of the issue arising again at the new trial.

[5] "Grounds not stated which reasonably could have been known at the time a [pretrial] motion is filed shall be deemed to have been waived, but a judge for cause shown may grant relief from such waiver." Mass. R. Crim. P. 13 (a) (2).

[6] The judge denied a motion for reconsideration. The defendant's application for interlocutory appeal was denied by a single justice of this court. An appeal to the full bench was voluntarily dismissed in accordance with the parties' stipulation.

We consider separately the motion to suppress and the motion to amend.[7] The motion to suppress contained only issues that had been raised prior to the first trial. We confronted a similar situation in *Commonwealth* v. *Richmond*, 379 Mass. 557 (1980). The defendant in *Richmond* had filed a motion to suppress, which was denied in part after a hearing; he was convicted, but, on appeal, the judgment was reversed on other grounds. Prior to his second trial Richmond filed a motion to suppress that relied on the same facts that were presented in his first motion. We held that a motion judge in such circumstances may, but has no obligation to, conduct another hearing on the motion, so long as no new issues are raised and the relevant law has not changed. *Richmond*, *supra* at 558. See *Commonwealth* v. *Upton*, 390 Mass. 562, 565 n.3 (1983), rev'd on other grounds, 466 U.S. 727 (1984), *S.C.*, 394 Mass. 363 (1985).[8] The defendant's motion to suppress in the case before us contained no new issues, and the applicable law had not changed. There was, therefore, no requirement that the motion judge conduct a hearing.

In his motion to amend, the defendant did seek to state an issue that had not been considered prior to the first trial, that is, the issue of mental illness and its effect on voluntariness. However, in attempting to raise the issue, the defendant did not comply with rule 13 (a) (2), which requires a supporting affidavit.[9] The motion to amend stated that the defendant had recently received the report of a psychiatrist who had

[7] It is unclear from the record whether the motion judge denied the motion to amend and then denied the motion to suppress, or whether he granted the motion to amend but then denied the newly amended motion to suppress. For purposes of analysis, we choose to consider the two motions individually.

[8] "Upon a showing that substantial justice requires, the judge . . . may permit a pretrial motion which has been heard and denied to be renewed." Mass. R. Crim. P. 13 (a) (5), 378 Mass. 871 (1978).

[9] "[A]n affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion shall be attached [to a pretrial motion]." Mass. R. Crim. P. 13 (a) (2). The purpose of the rule is twofold: First, it indicates to the judge whether the party can meet his "initial burden of establishing the facts necessary to support his motion"; and, second, it provides reliable notice to

examined him. The motion to amend then quoted this psychiatrist as writing as follows: "I have reviewed the videotape and in my opinion, [the defendant] was in an altered mood and altered state of consciousness at the time of the confession, and appeared to be under psychological stress when he made the confession." The defendant did not attach an affidavit from the psychiatrist, nor did he append a copy of the psychiatrist's report. A quotation from the psychiatrist's report did not fulfil the functions of an affidavit and was thus no substitute for the documents required by rule 13 (a) (2). See note 9, *supra.* The motion judge properly denied the motion. See *Commonwealth* v. *Fenderson,* 410 Mass. 82, 87 n.5 (1991), and cases cited.

His pretrial motions having been denied, the defendant requested a hearing before trial on the issue of voluntariness.[10] There was no error in refusing a pretrial hearing on this ground, as the issue of voluntariness under the common law "humane practice" rule may be raised at trial as well as by a pretrial motion. In this case the judge denied the pretrial motion because no new issue had been properly put before him, and he reasoned that the issue had been resolved in prior hearings. See *Commonwealth* v. *Bryant,* 390 Mass. 729, 745 (1984) (pretrial hearings on a motion to suppress may satisfy the requirement of *Harris* voir dire). At trial, the defendant introduced evidence of mental illness only after his confession had been admitted in evidence. The issue was heard fully by the jury, and the trial judge properly instructed the jury to

---

the opposing party of the facts supporting the motion. *Commonwealth* v. *Santosuosso,* 23 Mass. App. Ct. 310, 313 (1986).

[10]Under Massachusetts practice, once the defendant has come forward with evidence that his confession was given involuntarily, the judge must conduct a voir dire hearing on the issue in the absence of the jury. If the judge rules that the confession was involuntary, he must exclude it. If he rules that it was voluntary, then he may allow its admission in evidence but must also follow the "humane practice" of instructing the jury to determine the voluntariness of the confession themselves and to ignore an involuntary confession. See, e.g., *Commonwealth* v. *Tavares,* 385 Mass. 140, 151-152, cert. denied, 457 U.S. 1137 (1982); *Commonwealth* v. *Harris,* 371 Mass. 462, 467-471 (1976).

determine whether the confession was voluntary and to disregard it if it was not.[11] See *Commonwealth* v. *Chung,* 378 Mass. 451, 457 (1979). There was no error.

3. *Limitations of testimony of defense expert.* The defendant argues that the judge improperly curtailed the testimony of his expert witness. The contention is without support in the record.

The testimony of the defendant's expert during a voir dire hearing revealed that the defendant had undergone the following tests: an electroencephalogram (EEG), a CAT scan, blood tests, and a "neuropsychological in-depth" test. According to the expert, the first two tests showed abnormalities in the brain, the blood tests were unremarkable except for a slight elevation of chloride, and the neuropsychological test showed no dysfunction. Despite objections from the Commonwealth, the judge allowed the expert to testify before the jury on the results of the tests. The judge, however, prohibited further testimony after the expert had testified about the results of the EEG and of the CAT scan. The defendant ar-

---

[11]The jury heard evidence regarding the voluntariness of the defendant's confession. Staff Sergeant Bruce Gordon of the Massachusetts State police testified that the defendant was advised of his Miranda rights, both orally and in writing; that the defendant indicated his understanding of these rights; that the defendant was told at his home that he was not under arrest, and that he chose to accompany the officers to the police station; that the defendant was, in the sergeant's opinion, acting normally during this period and was sober; that the defendant was given water, coffee, and doughnuts while at the police station; and that the defendant gave an inculpatory statement and then agreed to repeat it on videotape. This videotape was played for the jury. On cross-examination, the sergeant denied having made any threats or promises in order to obtain the confession from the defendant. In his instructions to the jury, the judge properly told them that they could not consider the defendant's statement unless they found that the Commonwealth had proven beyond a reasonable doubt that the confession was given voluntarily. The judge instructed the jury to consider all the circumstances of the confession, including such factors as the time, place, and duration of the questioning, the defendant's physical and mental condition, and whether the defendant had understood his Miranda rights.

gues that the expert should have been allowed to testify on the results of the blood tests.[12]

As the Commonwealth notes, the judge allowed the defendant to inquire into the test results on redirect examination of the expert.[13] Given this opportunity, the psychiatrist testified about the results of the blood tests. The defendant was able to introduce the evidence he complains was excluded by the judge. There was no error.

4. *Deliberate premeditation.* At the close of the Commonwealth's case, and again at the close of all the evidence, the defendant filed motions for a required finding of not guilty as to so much of the indictment as charged murder in the first degree. The defendant renewed his motion with regard to the murder charge after the jury were discharged. Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1978). The motions were denied. The defendant now argues that the evidence did not support the finding of deliberate premeditation necessary for a conviction of murder in the first degree. The role of this court is to determine "whether the evidence, in its light most favorable to the Commonwealth, was sufficient to permit the jury to infer deliberate premeditation." *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605 (1978). We consider the evidence at each point at which the defendant made his motions. "To prove deliberate premeditation . . . the Commonwealth must show that the defendant's resolution to kill was a product of cool reflection. '[W]here the purpose is resolved upon and the mind determined to do it before the blow is struck, then it is, within the meaning of the law, deliberately premeditated malice aforethought.' " *Id.,* quoting *Commonwealth* v. *Tucker,* 189 Mass. 457, 494 (1905).

At the moment of each of the defendant's motions, the evidence at trial supported a jury finding of deliberate premeditation on the part of the defendant. After the defendant and

---

[12]The neuropsychological test revealed no abnormalities. The defendant does not argue that the results of that test should have been admitted in evidence.

[13]The judge apparently determined that the Commonwealth had opened this area of inquiry on cross-examination.

his brother took the victim's money, the victim indicated that he would call the police. The defendant's brother tried to strangle the victim, but, when that did not kill the victim, the defendant and his brother threw rocks at the victim's head until he was dead. The number of abrasions on the victim's skull suggested a concerted effort to kill. The evidence revealed deliberation, resolution, and action. See *Commonwealth* v. *Soares*, 377 Mass. 461, 469-470, cert. denied, 444 U.S. 881 (1979), quoting *Tucker, supra* at 495. There was no error.

5. *G. L. c. 278, § 33E.* We have reviewed the record of the proceedings on the law and the facts. We perceive no reason to revise the murder conviction pursuant to our power under G. L. c. 278, § 33E.

*Judgment affirmed.*