## COMMONWEALTH vs. DEREK CRYER.

Middlesex. December 2, 1997. - January 30, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional
rights, Assistance of counsel. *Practice, Criminal,* Admissions and confes-
sions, Voluntariness of confession, Assistance of counsel, Instructions to
jury, Capital case. *Evidence,* Admissions and confessions, Credibility of
witness. *Witness,* Police officer, Credibility.

In a murder case, the judge's conclusion that the defendant's confession was
  voluntary was supported by the record of the hearing on a motion to sup-
  press. [566]
In a murder case, the voluntariness of the defendant's waiver of his Fifth
  Amendment right to remain silent and right to counsel was not vitiated by
  the failure of police to inform him that his attorney had instructed the
  police in whose custody the defendant remained that the defendant was not
  to be questioned without the attorney's permission. [567-568]
Article 12 of the Declaration of Rights had no applicability to the conduct of
  New Hampshire police officers [568], and where Massachusetts police had
  no knowledge of any improper conduct of the New Hampshire police
  regarding a Massachusetts defendant in New Hampshire custody, no viola-
  tion of the defendant's art. 12 rights could be shown; in particular, there
  was no basis to suppress the defendant's confession to the Massachusetts
  officers [569-569].
In a criminal case, the judge did not abuse his discretion in denying, without a
  hearing, the defendant's motion for a rehearing on his motion to suppress
  his confession; in concluding that the defendant's claim of coercion was
  not credible; and in assessing the credibility of the police officers who
  obtained the defendant's confession. [569-571]
No substantial likelihood of a miscarriage of justice was created at a murder
  trial by the judge's instructions to the jury on the voluntariness of the
  defendant's confession, where the instructions were adequate and, in
  context, could not have misled the jury. [571-573]
No reason appeared on the record of a murder trial to warrant the court to
  exercise its power under G. L. c. 278, § 33E, to order the entry of a find-
  ing of not guilty or grant a new trial. [573-573]

INDICTMENTS found and returned in the Superior Court Depart-
ment on October 3, 1991.

A request for a rehearing on a pretrial motion to suppress

evidence was considered by *John P. Forte*, J., sitting under statutory authority, and the cases were tried before *Gordon L. Doerfer*, J.

*Willie J. Davis* for the defendant.

*Rosemary Daly*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. After a jury trial, the defendant, Derek Cryer, was convicted of murder in the first degree by reason of deliberate premeditation, extreme atrocity or cruelty, and felony-murder. The defendant was also convicted of the underlying felony of armed robbery. Central to this appeal is the defendant's contention that his confession, which was given to Massachusetts police while he was being held in New Hampshire on an unrelated matter, should have been excluded from evidence as having been made involuntarily, because his attorney in the unrelated matter had instructed the New Hampshire police that the defendant was not to be questioned without the attorney's permission. The defendant also contends that his request for a rehearing on the motion to suppress his confession was improperly denied and that the judge's charge to the jury was improper. Finally, the defendant requests that we exercise our plenary power under G. L. c. 278, § 33E, either to order the suppression of the defendant's confession and thereafter to order the entering of a required finding of not guilty, or, in the alternative, to order a new trial. For the reasons set forth below, we affirm the convictions and decline to exercise our power under G. L. c. 278, § 33E.

*Facts.* We set forth the facts in the light most favorable to the Commonwealth. See *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). The defendant and Richard Kendall went to the Everett home of an acquaintance, Martin "Marty J." Santos, on the night of March 4, 1990, with the intent of robbing Santos and then killing him, so as not to leave a witness. After watching television for a while, the defendant and Kendall attacked Santos, first beating him and then stabbing him with scissors and a knife. The defendant and Kendall then stole the cable descrambling device from Santos's television and two jackets belonging to Santos. They put the jackets over their heads as they left Santos's apartment and discarded the jackets near the outside door. The defendant and Kendall later traded the descrambler for two marihuana cigarettes.

The police investigation of Santos's murder did not turn up

any immediate suspects. The police had made no connection between the murder and either the defendant or Kendall until September, 1991, when New Hampshire police arrested them on a burglary charge that was unrelated to the murder. Among the allegedly stolen items found in the possession of the defendant and Kendall was a video camera. Part of the tape in the video camera had been recorded over and contained the voices of the defendant and Kendall (although they could not be seen on the tape). Their conversation implicated Kendall in the murder of one "Marty J." and may also have implicated the defendant.[1]

On viewing the tape, the New Hampshire police contacted the Everett police to advise them of its contents. An Everett detective and a Massachusetts State trooper listened to an audio version of the tape on September 6, 1991. On September 10, the two Massachusetts officers traveled to New Hampshire to question the defendant and Kendall at the New Hampshire jail in which they were being held. On arriving, the Massachusetts officers asked correction officers at the New Hampshire jail if there were any instructions from the attorneys or the families of the defendant or Kendall concerning police questioning, and were informed correctly that there were no such instructions.

The Massachusetts officers questioned the defendant and Kendall separately, starting with the defendant. As the questioning began, the officers read the defendant his Miranda rights and he signed a card indicating that he understood his rights and waived them. The defendant admitted that the voices on the videotape belonged to him and Kendall. However, the defendant told the officers that he had not been present during the murder and that Kendall had killed Santos. The defendant told the officers that, on the day following the murder, Kendall had told him everything that had happened. The officers then questioned Kendall, who told them that he had not participated in the murder and that the defendant had killed Santos.

The Massachusetts officers returned to the New Hampshire jail the following evening. On arriving, they again asked if there were any instructions concerning the questioning of the defendant or Kendall and were informed correctly that there were no such instructions. The Massachusetts officers then

---

[1]On the tape, Kendall admits to having told a person named Eric that he (Kendall) had killed "Marty J." It is unclear from the tape whether the defendant responded, "you'll be all right," (thus implicating only Kendall) or, "we'll be all right," (thus implicating both Kendall and the defendant).

started to question Kendall. While they were questioning Kendall, the attorney who had been appointed to represent the defendant on the New Hampshire burglary charge called the New Hampshire police and officials at the New Hampshire jail and instructed them that he did not want the defendant to be questioned without the attorney's permission. The New Hampshire police[2] did not tell the defendant or the Massachusetts officers about the attorney's call.

Later that evening, the Massachusetts officers completed their questioning of Kendall and began to question the defendant again. At that time, they did not ask if any new instructions had been received concerning the questioning of the defendant since their arrival at the New Hampshire jail, some two hours earlier. The officers reread the defendant's Miranda rights to him, he signed a new card waiving his rights, and he agreed to answer the officers' questions. The officers told the defendant what Kendall had told them. The defendant then made a full confession, which the officers wrote out. The defendant reviewed, corrected, initialed, and signed the confession. At no time during either of the sessions with the Massachusetts officers did the defendant request to speak with an attorney or to use a telephone.

On the following day, the defendant's attorney instructed the Everett police that he did not want any further questioning of the defendant and the Massachusetts officers ceased all questioning.

Prior to his first murder trial, the defendant moved to suppress his confession. The trial judge denied the motion, finding beyond a reasonable doubt that the defendant had made a knowing, intelligent, and voluntary waiver of his rights protected by the Fifth and Sixth Amendments to the United States Constitution, and that the police did not interfere with the defendant's right to counsel.

The defendant's first trial ended in a mistrial. Prior to his second trial, the defendant sought a rehearing on the motion to suppress. The same judge denied the request without a hearing.[3] At the defendant's second murder trial, the trial judge instructed

---

[2]For the sake of simplicity, we will hereafter refer to the New Hampshire police and the correction officers at the New Hampshire jail as the New Hampshire police.

[3]The judge who ruled on the request for the rehearing had presided over the original suppression hearing and the defendant's first murder trial.

the jury on three occasions that they had to find that the defendant's confession was voluntary beyond a reasonable doubt before they could consider it as evidence. However, at no time did the judge mention any specific factors bearing on the question of voluntariness or explicitly state that voluntariness is based on the totality of the circumstances. The jury convicted the defendant on all three theories of murder in the first degree.

1. *Denial of the motion to suppress.* The defendant argues that the original motion to suppress his confession was denied erroneously. The defendant's argument in this regard is twofold.

The defendant's first contention is that evidence must appear affirmatively from the record that the Commonwealth has demonstrated the voluntariness of the confession beyond a reasonable doubt. See *Commonwealth* v. *Mello*, 420 Mass. 375, 383 (1995); *Commonwealth* v. *Parham*, 390 Mass. 833, 838 (1984); *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). The defendant notes that the findings of the motion judge concerning the voluntariness of the confession do not address the defendant's claims that (1) he did not make a statement until the interrogating officers told him that, if convicted, he would never see the light of day; (2) the officers told him that they did not believe his story; and (3) the officers told him that if he told the truth, they would speak to the district attorney about favorable sentencing considerations. The defendant thus argues that the record does not show with sufficient clarity that his statement was voluntary beyond a reasonable doubt.

There is no requirement that the judge make specific findings as to each item of unsupported testimony, but only as to the legal contention on which such testimony might bear. See *Commonwealth* v. *Rainwater*, 425 Mass. 540, 544 n.2 (1997). The judge's conclusion that the defendant's confession was voluntary is supported by the testimony of the interrogating officers, who stated that the defendant appeared sober and coherent, that he did not appear to have any problems understanding them, and that they had no problems understanding him. The judge's conclusion is further supported by evidence that the defendant had signed two Miranda waiver cards. See *Commonwealth* v. *Judge*, 420 Mass. 433, 448 (1995); *Commonwealth* v. *Bousquet*, 407 Mass. 854, 861 (1990). The judge's conclusion implicitly rejects the defendant's credibility with respect to any claims that the judge did not explicitly address. There is no error. See *Commonwealth* v. *Barros*, 425 Mass. 572, 579 (1997).

The defendant's second contention is that his statement to the Massachusetts officers should be suppressed because his attorney for the unrelated New Hampshire matter had left instructions with the New Hampshire police that the defendant was not to be questioned without the attorney's permission. The New Hampshire police never told the Massachusetts officers or the defendant about these instructions. The defendant thus argues that his confession was not voluntary because his waiver was not valid.

In this regard, the defendant relies on *Commonwealth* v. *Sherman*, 389 Mass. 287 (1983), and *Commonwealth* v. *McKenna*, 355 Mass. 313 (1969). In each of these cases, which we decided on the basis of Fifth Amendment protections, we held that a defendant's waiver of his Miranda rights was not valid because the police knew that the defendant's attorney had requested to be present during any questioning of the defendant and had failed to inform the defendant of that request. See *Sherman, supra* at 291-296; *McKenna, supra* at 323-326.

To the extent that the defendant's argument is based on the protections found in the Fifth Amendment to the Federal Constitution, his reliance on *Sherman* and *McKenna* is undermined by the subsequent holding of the United States Supreme Court in *Moran* v. *Burbine*, 475 U.S. 412, 421-424 (1986). The *Moran* Court held that the voluntariness of a defendant's waiver of his Fifth Amendment right to remain silent and right to counsel was not vitiated by the failure of police to inform him that his attorney had telephoned for him at the police station during the course of police questioning. *Id.* The Court concluded that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.* at 422. The Court further concluded that "the level of the police's culpability in failing to inform [a defendant] of [his attorney's] telephone call [does not have] any bearing on the validity of the waivers." *Id.* at 423.

*Moran* thus dictates that, under the Fifth Amendment, the New Hampshire police had no obligation to inform either the Massachusetts officers or the defendant of the attorney's instructions. For the same reason, the Massachusetts officers had no such obligation to the defendant, even if they had known or should have known about the attorney's instructions. Accordingly, neither the New Hampshire police nor the Massachusetts

officers violated the defendant's Fifth Amendment rights in this regard.

At oral argument, the defendant raised for the first time the issue whether his rights under art. 12 of the Declaration of Rights of the Massachusetts Constitution were violated by the failure of the New Hampshire police to inform the Massachusetts officers (or the defendant himself) of his attorney's instructions. To the extent that the issue is before us, we note that we can interpret the rights of our citizens under art. 12 to be more expansive than those guaranteed by the Federal Constitution. See *Commonwealth* v. *Hodge*, 386 Mass. 165, 169 (1982). In considering the issue of Massachusetts constitutional law, we thus are not necessarily bound by the holding of the *Moran* Court. Indeed, we do not decide now whether the holding of the *Moran* Court would extend to claims made under art. 12. Nonetheless, we conclude that there is no violation of the defendant's art. 12 rights here.

Article 12 would not apply to the New Hampshire police unless they had been engaged in a combined enterprise with the Massachusetts officers with respect to the murder investigation. See *Commonwealth* v. *Gonzalez, ante* 313, 317 (1997). The involvement of the New Hampshire police was simply too minimal for a combined enterprise to have existed here.[4] The New Hampshire police therefore did not violate the defendant's art. 12 rights, because art. 12 does not apply to the New Hampshire police.

Further, the defendant concedes in his brief that the Massachusetts officers "were not aware and could not inform the defendant of [the attorney's instructions]." The defendant argues instead that it was incumbent upon the New Hampshire police to inform the Massachusetts officers of the attorney's instructions, because the New Hampshire police knew that the Mas-

---

[4]In *Commonwealth* v. *Gonzalez, ante* 313, 314, 316-317 (1997), we concluded that no combined enterprise existed between Federal agents and Massachusetts police where the Massachusetts police acted under the direction and discretion of Federal agents and the Massachusetts police merely provided surveillance and intelligence information, provided facilities for field tests of drug purchases made by Federal agents, and occasionally joined Federal agents in monitoring conversations transmitted from a "body wire" worn by a Federal agent. Here, the involvement of the New Hampshire police was substantially less. It consisted of supplying the evidence to the Massachusetts officers in the first place and then providing facilities where the Massachusetts officers could view the evidence and interrogate the defendant and Kendall.

sachusetts officers had earlier inquired about any such instructions. The improper conduct, if any, was thus committed entirely by the New Hampshire police. Accordingly, the Massachusetts officers also did not violate the defendant's art. 12 rights.[5]

In refusing to suppress the defendant's confession, we also take note of the broad policy considerations behind the exclusionary rule. This rule is intended to deter impermissible police conduct by excluding from trial any evidence that was improperly obtained. See *Michigan* v. *Tucker*, 417 U.S. 433, 446-447 (1974); *Commonwealth* v. *Mahnke*, 368 Mass. 662, 696 (1975), cert. denied, 425 U.S. 959 (1976). Fashioning a rule under art. 12 to fit the facts of the instant case would serve no useful purpose as far as the police of another jurisdiction are concerned. They are unlikely to be instructed or deterred by the suppression of evidence in accordance with rules by which they are not accustomed to playing. See *United States* v. *Rose*, 570 F.2d 1358, 1361-1362 (9th Cir. 1978); *Commonwealth* v. *Wallace*, 356 Mass. 92, 95 (1969); *Commonwealth* v. *Gagnon*, 16 Mass. App. Ct. 110, 122 (1983). By the same token, on any view of the law, there can be no deterrent effect on the Massachusetts officers here because their conduct was not improper. There is no basis to suppress the defendant's confession. The judge's decision to deny the suppression motion is correct.

2. *Denial of request for rehearing.* In the affidavit supporting his request for a rehearing on the suppression motion, the defendant alleged, for the first time, that he was coerced into confessing through physical and mental intimidation and threats. The defendant further alleges that a rehearing was warranted because evidence presented at the first trial called into question the credibility of one of the officers who had obtained the defendant's confession. Finally, the defendant alleges that a rehearing was warranted because he had wanted to testify at the original suppression hearing, but had been denied the opportunity to do so as a result of confusion at the end of the hearing.

A motion judge has the discretion to act on a request for a rehearing without conducting a new hearing, if the defendant

---

[5]As in *Gonzalez, supra* at 317, nothing in this case should be read as endorsing a "reverse silver platter" doctrine. If the involvement of the New Hampshire police had been greater, our conclusion here might have been different, both with respect to whether art. 12 applied to the New Hampshire police and to whether the conduct of the Massachusetts officers was improper.

has raised no new issues and the relevant law has not changed. See *Commonwealth* v. *Parker*, 412 Mass. 353, 355-357 (1992); *Commonwealth* v. *Griffin*, 19 Mass. App. Ct. 174, 185 (1985). A motion judge is also permitted to make determinations of the credibility of claims in a defendant's affidavit. See *Commonwealth* v. *Toney*, 385 Mass. 575, 579 (1982), and cases cited; *Commonwealth* v. *Leate*, 361 Mass. 347, 349-350 (1972).

There is no abuse of discretion in the judge's implicit conclusion that the defendant's claim of coercion was not credible. The judge who denied the defendant's request had presided over the suppression hearing, as well as the defendant's first trial. See note 2, *supra*. He is in the best position to assess the merits of the defendant's new claims. Further, the defendant's claim, if true, could have been raised at the first hearing. The defendant thus cannot argue that such a claim represents a new issue. See *Commonwealth* v. *Upton*, 390 Mass. 562, 565 n.3 (1983).

Similarly, there is no abuse of discretion in the judge's implicit conclusion concerning the credibility of one of the officers who obtained the defendant's confession. Here again, the judge is in the best position to assess the merits of this claim. Furthermore, the defendant challenged the credibility of only one of the two officers who had obtained his confession. Even if the judge doubted the credibility of the challenged officer, he could conclude that the defendant's confession was voluntary based on the testimony of the other officer alone.

Finally, the defendant's claim that he wanted to testify at a rehearing because he was not given the opportunity to do so at the original suppression hearing is disingenuous. Despite evidence in the record supporting the defendant's assertion that he wanted to testify at the original hearing, he never raised this issue again until his request for the rehearing, despite having ample time to do so prior to his first trial.

The defendant thus raises no new issues and has not contended that the relevant law has changed. The judge's denial of the motion for a rehearing is proper.

3. *The judge's charge.* The defendant contends that the judge's charge to the jury concerning the voluntariness of the confession was improper. The defendant did not object to the voluntariness instructions at the second murder trial and the defendant concedes that our inquiry is limited to whether the instructions create a substantial likelihood of a miscarriage of

justice. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993).

Under the Commonwealth's "humane practice," if the voluntariness of a defendant's statement is a live issue at trial, the judge must instruct the jury that the Commonwealth has the burden of proving beyond a reasonable doubt that the statement was made voluntarily and that the jurors must disregard the statement unless the Commonwealth has met its burden. See *Commonwealth* v. *Grenier*, 415 Mass. 680, 687 (1993); *Commonwealth* v. *Parham*, 390 Mass. 833, 841 (1984); *Commonwealth* v. *Tavares*, 385 Mass. 140, 152 (1982). The failure of a judge to instruct the jury properly on the voluntariness of a defendant's statement may result in a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Vazquez*, 387 Mass. 96, 102-103 (1982).

The judge gave instructions on voluntariness both immediately before and immediately after the defendant's confession was introduced in evidence, and again in his final charge to the jury. The first two instructions stated that the jury could not consider any of the defendant's statements unless, from "all the evidence," the Commonwealth had proved beyond a reasonable doubt that the defendant had made the statement voluntarily, freely, and rationally. The final instruction did not contain the "all the evidence" language, but nonetheless reiterated the Commonwealth's burden of proof with respect to the issue of voluntariness.

The defendant argues that these instructions were inadequate because they did not provide the jury with sufficient guidance in reaching their determination of the voluntariness of the defendant's statements. The defendant argues that the judge was obligated to instruct the jury on the specific factors they should consider in determining voluntariness. See *Commonwealth* v. *Parker*, *supra* at 358 n.11.[6] In the alternative, the defendant argues that the judge, at a minimum, should have instructed the jury to consider the defendant's statements in the totality of the circumstances. See *Commonwealth* v. *Blanchette*, 409 Mass. 99, 108 n.4 (1991).

---

[6]In *Commonwealth* v. *Parker*, 412 Mass. 353, 358 n.11 (1992), the judge's instruction indicated that the jury should consider all the circumstances of the confession, including such factors as the time, place, and duration of the questioning, the defendant's physical and mental health, and whether the defendant understood his Miranda rights.

The defendant argues that the jury's need for guidance with respect to the determination of voluntariness is especially critical in this case because the defendant's closing arguments focused almost entirely on this issue. In addition, the defendant argues that, depending on the jury's interpretation of the defendant's statement on the videotape, see note 1, *supra,* the only evidence linking the defendant to the murder is the defendant's confession.

We do not accept the defendant's argument. The judge's instructions that the jury should consider "all the evidence" in making their determination of voluntariness is similar to the instruction given by the judge in *Commonwealth* v. *Rodriguez,* 425 Mass. 361, 369 (1997), where we concluded that there was no likelihood that the jury did not understand that they were required to find that the statements were voluntarily, freely, and rationally made.[7] In determining the propriety of a jury instruction, we must consider the instruction in the context in which it was delivered, in order to determine its probable effect on the jury's understanding of their function. See *Commonwealth* v. *Rodriguez, supra* at 369; *Commonwealth* v. *Fryar,* 425 Mass. 237, 246-247, cert. denied, 118 S. Ct. 636 (1997). The other evidence presented at trial, as well as the defense counsel's closing statement, made clear to the jury what factors they should consider in weighing whether the defendant's statements were voluntary. It may be customary, or perhaps even preferable, for judges to recite some of these factors in their instructions to the jury or to use explicitly the "totality of the circumstances" language, but our cases do not require more than what the judge provided here. See *Commonwealth* v. *Grenier, supra* at 687-688; *Commonwealth* v. *Williams,* 388 Mass. 846, 856-857 (1983). The judge's instructions on voluntariness are adequate and there is no likelihood of a miscarriage of justice.[8]

4. *Review under G. L. c. 278, § 33E.* The defendant requests

[7] In *Commonwealth* v. *Rodriguez,* 425 Mass. 361, 369 (1997), the relevant part of the instruction stated that the jury could "consider such statements in your deliberations from *all the evidence in the case,* but the Commonwealth has to prove beyond a reasonable doubt that the defendant made the statement that he is alleged to have made and that he . . . made the statement voluntarily, freely and rationally" (emphasis added).

[8] The defendant also argues that a comparison of the defendant's two trials demonstrates the need for a more detailed instruction concerning voluntariness. In the first trial, the judge's instruction included specific factors that the jury could consider in determining voluntariness, and also stated explicitly

that we order the suppression of his confession and thereafter order the entering of a required finding of not guilty, or, in the alternative, that we order a new trial. We have reviewed the entire record on both the law and the evidence, see G. L. c. 278, § 33E, but see no basis for relief. The defendant's convictions, in our opinion, are more than amply supported by the evidence.

*Judgments affirmed.*

---

that voluntariness is determined on the totality of the circumstances. The defendant concludes that, because this first trial ended in a mistrial, at least one juror must have concluded that the defendant's statement was not voluntary. The implication that the defendant appears to be drawing here is that a more detailed instruction in the second trial would have resulted in the jury reaching a similar conclusion. Because we conclude that the judge's instruction in the second trial was adequate, we need not address this argument.