## COMMONWEALTH vs. LUIS RODRIQUEZ.[1]

Middlesex. October 7, 2011. - December 12, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & DUFFLY, JJ.

*Homicide. Practice, Criminal,* Required finding, Instructions to jury, Capital case. *Self-Defense. Evidence,* Self-defense, Prior violent conduct.

At the trial of an indictment charging murder in the first degree, there was ample evidence to sustain the defendant's conviction on the basis that the stabbing was committed with extreme atrocity or cruelty, given that the jury could have found that the defendant took pleasure in having stabbed the victim, that the defendant's attack of the victim, i.e., stabbing the unarmed man seven times with significant force, was brutal and disproportionate to what was needed to bring about death, and that the victim suffered from his injuries (caused by repeated blows to areas of his body likely to cause serious injury and pain) while he was conscious for some time after the attack. [103-105]

At a murder trial, no substantial likelihood of a miscarriage of justice arose from the judge's failure, when reinstructing the jury in response to a question from them on the definitions of heat of passion and sudden mutual combat, to repeat his initial instruction that the Commonwealth bore the burden of proving beyond a reasonable doubt the absence of mitigating circumstances, where the evidence did not warrant a voluntary manslaughter instruction, in that the victim's act of walking hastily toward the defendant did not raise a reasonable doubt concerning the existence of sudden mutual combat [105-108], nor did the fact that the defendant was struck first raise such a doubt, given that the defendant originally tried to engage the victim in a fight by goading him and then by unsuccessfully trying to strike him [108-109].

At a murder trial, the judge did not err in declining to instruct the jury on excessive force in self-defense, where the evidence was clear that the defendant initiated the attack and did not take advantage of every opportunity to avoid combat. [109-110]

At a murder trial, the judge correctly excluded evidence of the victim's prior violent conduct, where the evidence at trial did not raise an issue of self-defense. [110-111]

This court declined to exercise its power under G. L. c. 278, § 33E, to reduce a verdict of murder in the first degree to a lesser degree of guilt. [111-112]

INDICTMENT found and returned in the Superior Court Department on January 22, 2009.

[1]As is our custom, we spell the defendant's name as it appears in the indictment.

The case was tried before *Howard J. Whitehead*, J.

*Kenneth I. Seiger* for the defendant.

*Casey E. Silvia*, Assistant District Attorney, for the Commonwealth.

IRELAND, C.J. On February 9, 2010, a jury convicted the defendant, Luis Rodriquez, of murder in the first degree by reason of extreme atrocity or cruelty.[2] Represented by new counsel following his conviction, the defendant argues error in (1) the denial of his motions for a required finding of not guilty; (2) the judge's instructions to the jury; and (3) the exclusion of evidence of prior violent conduct by the victim. In addition, the defendant asserts that we should exercise our power under G. L. c. 278, § 33E, to reduce the verdict to a lesser degree of guilt. We affirm the defendant's conviction and discern no basis to exercise our authority under G. L. c. 278, § 33E.

1. *Background.* The jury could have found the following facts. After an evening of parties and drinking, the defendant and his friend, Luis Gonzalez, accompanied by Edwin Torres,[3] all of whom were "buzzed," decided to head home. It was about 6:30 A.M. on Saturday, November 29, 2008. On their way home, the men walked through a parking lot of a store located at the intersection of Westford and Chelmsford Streets in Lowell. The victim, Mazen Alwarad, worked at the store as a clerk. His English was poor.

At about 6:41 A.M., the victim went outside the store, to the left of its entrance, to smoke a cigarette. Shortly thereafter, the defendant walked over to the victim and asked him for a cigarette and a light, which the victim provided.[4] The defendant said something to the victim about his (the victim's) inability to speak English.[5] Hearing this, Gonzalez told the defendant, "Let's

---

[2]The Commonwealth had proceeded also under a theory of deliberate premeditation, which the jury rejected.

[3]The Commonwealth called Edwin Torres as a witness, but he invoked his privilege under the Fifth Amendment to the United States Constitution and refused to testify.

[4]There was testimony that the defendant was slightly taller than the victim.

[5]A store patron who did not observe anything physical occur between the defendant and the victim heard the defendant remark to the victim, "What the fuck's wrong with you?" and "Don't you speak English?" In response, the victim shrugged.

go."[6] Instead, the defendant turned to a patron who was entering the store and remarked that the victim was "talking shit" and that he, the defendant, did not "respect" the victim. After verbally goading the victim,[7,8] the defendant punched at the victim and hit him.[9] The victim punched back and a fistfight ensued. During the brawl, which only lasted a couple of minutes, the defendant repeatedly stabbed the victim. At one point, the victim fell on top of the defendant and someone (no one could say who) shouted, "Stop, stop."

The fight appeared to end abruptly. The victim got up and went into the store, as recorded by an interior surveillance camera, at 6:47 A.M. Leaving a trail of blood behind him, he headed to the bathroom and called for the other clerk. The clerk found the victim in the bathroom and observed blood on his face. The clerk went back to the register area of the store, activated a silent alarm, and asked a customer to telephone for help.

As the victim was heading into the store, the defendant stood up, waived an object in the air, and shouted, "I still got." He then joined Gonzalez and Torres. The defendant had blood on his nose, but no other visible injuries. He held a knife that had blood dripping from it and twice stated to Gonzalez, "I got him." The defendant laughed and the three men walked away.

Lowell police officers arrived at the store around 6:49 A.M. The victim was lying on the bathroom floor "covered" in blood and bleeding profusely. Paramedics brought him to a landing zone, where he was transported by a helicopter to a Boston hospital. There he died as a result of multiple stab wounds to the torso and extremity with perforation of the femoral vein.[10,11]

A few days later, on December 3, 2008, police officers located

---

[6]Luis Gonzalez testified that the victim told the defendant that he should leave before the victim contacted police.

[7]There was testimony that the defendant was making various statements such as, "Come on, what are you going to do?"

[8]Philip Jefferson, a store patron, testified that, after the defendant verbally goaded the victim, the victim walked "hastily" toward the defendant.

[9]Gonzalez recounted that, although the defendant threw the first punch at the victim, the punch did not make contact with the victim.

[10]The femoral vein is a large vein that returns all the blood in a person's leg to the abdomen and back to the heart.

[11]The victim suffered several knife wounds, including a deep stab wound to his testicle (which went through his scrotum, into his groin, and then penetrated

the defendant at his mother's house. He was hiding underneath a table in the basement with a jacket covering his body with the exception of his feet. As soon as he got to his feet, the defendant blurted out, "I wasn't there," and said that he had been in New Hampshire with his girl friend. The defendant had bruising under his eyes and his nose was swollen; he had minor cuts and scrapes on his hands. One of the officers administered Miranda warnings to the defendant, after which the defendant said he would speak with them. When asked how his injuries had occurred, the defendant said that he had fallen. The defendant was transported to an interview room at a police station, where he climbed up onto a radiator and tried to open a window.

During the execution of a search warrant of the defendant's mother's home, police recovered newspapers that contained articles about the victim's stabbing. They also found a receipt for a hotel room in New Hampshire that was rented in the defendant's name from November 30 to December 4, 2008.

The defendant did not testify. His trial counsel argued that although the stabbing was intentional and unlawful, the defendant acted in the heat of passion as a result of the fistfight that mitigated the crime from murder to manslaughter. The defense relied on the testimony of a store patron, Philip Jefferson, see note 8, *supra*, emphasizing that the victim did nothing to avoid the conflict.

2. *Sufficiency of the evidence.* We reject the defendant's contention that his motions for a required finding of not guilty were improperly denied because the evidence was insufficient to establish that the stabbing was committed with extreme atrocity or cruelty. We conclude that the Commonwealth's evidence, when considered under the governing standard, *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979), was sufficient to warrant a finding by the jury beyond a reasonable doubt that the defendant was guilty of murder in the first degree based on extreme atrocity or cruelty.

In determining whether a murder was committed with extreme atrocity or cruelty, juries consider the factors set forth in *Commonwealth v. Cunneen*, 389 Mass. 216, 227 (1983) (*Cunneen*).

and perforated his femoral artery); four stab wounds to his chest; an incised wound to his chest; an incised wound to his left hand; and an incised wound to his face.

See *Commonwealth* v. *Anderson*, 445 Mass. 195, 200 (2005). Under the criteria established in *Cunneen, supra,* a jury must find the presence of one or more of the following factors to convict a defendant of murder in the first degree based on extreme atrocity or cruelty: "(1) whether the defendant was indifferent to or took pleasure in the victim's suffering; (2) the consciousness and degree of suffering of the victim; (3) the extent of the victim's physical injuries; (4) the number of blows inflicted on the victim; (5) the manner and force with which the blows were delivered; (6) the nature of the weapon, instrument, or method used in the killing; and (7) the disproportion between the means needed to cause death and those employed." *Commonwealth* v. *Linton*, 456 Mass. 534, 546 n.10 (2010). See *Commonwealth* v. *Cunneen, supra.*

The defendant argues that the *Cunneen* factors were not established because the defendant's statement, "I got him," after the stabbing suggested only that he was glad to have prevailed in the fight. This determination was for the jury to decide and certainly could have been construed differently as there was sufficient evidence that the defendant took pleasure in having stabbed the victim. See *Commonwealth* v. *Smith*, 449 Mass. 12, 19 (2007); *Commonwealth* v. *Anderson, supra* at 202. See also *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992) (weight and credibility of evidence is "a matter wholly within the province of the jury"). In addition, the defendant argues that the stabbing was not disproportionate because the victim was able to walk away after being stabbed and because the pathologist who performed the autopsy testified that the wounds could have been inflicted from the combination of two individuals moving toward each other, as in a fight. The jury rejected his view of the evidence. There was sufficient evidence from which the jury could have concluded that the defendant's attack of the victim was brutal and disproportionate to what was needed to bring about death. The defendant stabbed an unarmed man seven times with "significant" force. Not only did he stab the victim in his chest four times, but he also stabbed the victim's testicle, all of which, according to the pathologist, likely would have caused the victim to experience pain. Because the victim was able to walk away after the stabbing (leaving a trail of

blood behind him), the victim was conscious for some time thereafter, and the jury could have reasonably concluded that he did in fact suffer from those injuries. See *Commonwealth* v. *Noeun Sok*, 439 Mass. 428, 431 (2003) (concluding there was sufficient evidence of extreme atrocity or cruelty where victim was conscious after stabbing and experienced severe pain); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 290-291, cert. denied, 493 U.S. 940 (1989) (finding sufficient evidence of extreme atrocity where victim suffered from injuries inflicted by defendant using "very severe degree of force"). That there were not, as in other cases, fifty-eight or ninety-eight stab wounds here is not relevant. While we have held that murder by extreme atrocity or cruelty can occur even if death results from a single blow, this was not a single blow, but rather repeated blows to areas in the body that were likely to cause serious injury and pain. See, e.g., *Commonwealth* v. *Glass*, 401 Mass. 799, 803 (1988). See also *Commonwealth* v. *Simmons*, 419 Mass. 426, 427-428 (1995) (murder committed with extreme atrocity or cruelty where victim died from eleven stab wounds); *Commonwealth* v. *Libby*, 405 Mass. 231, 236-237 (1989) (evidence sufficient to prove extreme atrocity or cruelty where defendant stabbed victim nine times). There was ample evidence for the jury to find that the defendant accomplished the killing with extreme atrocity or cruelty.

3. *Jury instructions.* a. *Supplemental instruction on heat of passion induced by sudden combat.* During the judge's charge to the jury, he twice instructed them on heat of passion induced by sudden combat, explaining that this circumstance "mitigates one's culpability for murder to manslaughter." In this portion of the charge, the judge twice correctly explained that the burden is on the Commonwealth to prove beyond a reasonable doubt that mitigating circumstances do not exist. He then twice correctly specified that the Commonwealth must prove beyond a reasonable doubt that the killing was not the product of heat of passion induced by sudden combat. After deliberating for some time,[12] the jury sent a note to the judge stating:

"Please clarify the definition of mitigating circumstances.

---

[12]The jury returned their verdict on the same day that the case was given to them.

Must there be heat of passion out of 'sudden and mutual' combat? Is 'sudden' AND 'mutual' required to exist in the circumstances in order for the situation to be considered mitigating?"

In response to the jury's question, the judge reinstructed on the definition of mitigating circumstances that he originally gave to them, defining the terms "heat of passion" and "sudden mutual combat." He did not repeat the instruction that the Commonwealth bears the burden of proving beyond a reasonable doubt the absence of mitigating circumstances. The defendant contends on appeal that this omission unconstitutionally shifted the burden of proof onto him.

Because the defendant did not object below to the instructions on this ground, we review to determine whether a substantial likelihood of a miscarriage of justice occurred. *Commonwealth* v. *Niemic*, 427 Mass. 718, 720 (1998). We conclude that no substantial likelihood of a miscarriage occurred because the evidence, viewed in the light most favorable to the defendant, see *Commonwealth* v. *Groome*, 435 Mass. 201, 220 (2001), did not warrant a voluntary manslaughter instruction based on heat of passion induced by sudden combat. Because the defendant received the benefit of an instruction to which he was not entitled, any errors in the instruction could not have prejudiced him.[13] See *Commonwealth* v. *Clemente*, 452 Mass. 295, 321 (2008), cert. denied, 555 U.S. 1181 (2009).

"Manslaughter is a common-law crime that has not been codified by statute in Massachusetts, so its elements are derived

---

[13]Were we to reach the issue, we would conclude that the better practice would be for the judge, in reinstructing the jury on the issue of sudden combat, to reiterate that the Commonwealth must prove beyond a reasonable doubt that the killing was not the product of heat of passion induced by sudden combat. In circumstances, however, where the judge four times correctly instructed the jury on the burden of proof in his main charge, the jury's question did not reflect any confusion regarding the issue of the burden of proof, and in his supplemental instruction the judge did not say anything to confuse or contradict his earlier instructions on the issue, the absence of an instruction on the burden of proof in the judge's supplemental instruction in response to the jury's question did not create a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Peters*, 372 Mass. 319, 325 (1977) ("On the whole . . . the charge would be understood as leaving the burden where it belonged").

from the common law." *Commonwealth* v. *LeClair*, 445 Mass. 734, 740 (2006), and cases cited. A verdict of manslaughter "depends on evidence, not always necessarily present in murder, [that will, if sufficient,] mitigate, but not excuse, an unlawful killing." *Id.*, quoting *Ariel A.* v. *Commonwealth*, 420 Mass. 281, 286 (1995). An unlawful killing may be rendered voluntary manslaughter if it is the result of (among other mitigating circumstances) "a sudden transport of passion or heat of blood . . . without malice . . . upon sudden combat." *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980), quoting *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). Guidance as to what constitutes sudden combat and heat of blood appears in *Commonwealth* v. *Webster*, 5 Cush. 295, 308 (1850): "When two meet, not intending to quarrel, and angry words suddenly arise, and a conflict springs up in which blows are given on both sides, without much regard to who is the assailant, it is a mutual combat. And if no unfair advantage is taken in the outset, and the occasion is not sought for the purpose of gratifying malice, and one seizes a weapon and strikes a deadly blow, it is regarded as homicide in heat of blood . . . ."

Here, the defendant argued at trial that sudden combat was a live issue based on Jefferson's testimony that, after the defendant verbally goaded the victim, see note 7, *supra*, the victim walked "hastily" toward the defendant, see note 8, *supra*, and based on Gonzalez's testimony that, although the defendant threw the first punch at the victim, the defendant missed and it was the victim's punch in response that made first contact. We conclude that this evidence failed to raise a reasonable doubt that what happened arose from sudden, mutual combat.

The defendant overlooks that the evidence, even in the light most favorable to him, shows that the defendant intended to quarrel with the victim and initiated the confrontation for the trivial reason that the victim did not speak English well. The victim just shrugged when the defendant asked, "What the fuck's wrong with you? Don't you speak English?" Further, both Gonzalez and the victim asked the defendant to leave. The defendant easily could have left and avoided an escalation of the situation. He chose not to and continued to verbally goad the victim. The defendant started the quarrel, continued it, and,

by swinging at the victim, was the one who escalated it into a physical situation (even though, based on the evidence in the light most favorable to him, he did not land the first blow). See *Commonwealth* v. *Curtis*, 417 Mass. 619, 629 (1994) (heat of passion induced by sudden combat instruction not warranted where defendant confronted victim and landed first blow).

"Generally, for sudden combat to be the basis of a voluntary manslaughter instruction, the 'victim . . . must attack the defendant or at least strike a blow against the defendant.' " *Commonwealth* v. *Espada*, 450 Mass. 687, 696-697 (2008), quoting *Commonwealth* v. *Pasteur*, 66 Mass. App. Ct. 812, 822 (2006). Here, it was the defendant who attempted to attack the victim by trying to strike first (despite the fact that he missed). Although the victim walked "hastily" toward the defendant before the defendant attempted to strike the victim, we have never held, and decline to do so now, that walking hastily toward someone amounts to an attack or amounts to mutual and sudden *combat*. We previously have concluded that the act of throwing a glass at a defendant was not sudden combat. *Commonwealth* v. *Zukoski*, 370 Mass. 23, 28-29 (1976). Certainly, walking quickly, by itself with no evidence of an accompanying physical gesture such as a fist raised and with no evidence of accompanying words to indicate intended violence,[14] cannot be considered combat or raise a reasonable doubt concerning the existence of combat.

The judge appeared to have found a voluntary manslaughter instruction to be warranted because eventually a fight occurred in which blows were exchanged. This is too limited a view of the evidence. We have stated that "physical contact between a defendant and a victim is not always sufficient to warrant a manslaughter instruction, even when the victim initiated the contact." *Commonwealth* v. *Walden*, *supra*. See *Commonwealth* v. *Curtis*, *supra* (victim's unsuccessful attempt to strike defendant insufficient to warrant voluntary manslaughter instruction); *Commonwealth* v. *Parker*, 402 Mass. 333, 344 (1988), *S.C.*, 412 Mass. 353 (1992), and 420 Mass. 242 (1995) (evidence that

---

[14]Words alone, however, are insufficient to produce the requisite state of passion to warrant a voluntary manslaughter instruction. See *Commonwealth* v. *Clemente*, 452 Mass. 295, 320-321 (2008), cert. denied, 555 U.S. 1181 (2009), and cases cited.

elderly and handicapped victim struck defendant twice during robbery did not support sudden combat charge). This is particularly so when a defendant is armed with a deadly instrument and a victim is not. See *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 321 (1973) ("It is an extravagant suggestion that scratches [inflicted by the victim on the defendant's face] could serve as provocation for a malice-free but ferocious attack by the defendant with a deadly instrument"). Here, the defendant, armed with a deadly weapon (knife), initiated a confrontation with the victim because the victim did not speak English well and continued to goad the victim despite the victim's and Gonzalez's requests for the defendant to leave. Although the defendant was struck first, it was the defendant who originally tried to engage the victim in a fight, first by goading him, then by attempting, unsuccessfully, to strike the first blow. In these circumstances, the defendant could not have been surprised that the victim would strike back. This result was not one that comprised mutual combat, and the evidence did not raise a reasonable doubt that what happened arose from sudden combat. See *Commonwealth* v. *Pasteur*, *supra* (request for manslaughter instruction based on reasonable provocation or sudden combat correctly rejected where defendant and two others, two of whom were armed with guns, made plan to retaliate against rival gang, went to location expecting to fight, and could not "have been surprised when their targets threatened to resist").

b. *Excessive use of force in self-defense.* The defendant next argues that the evidence entitled him to an instruction on excessive use of force in self-defense. Before a judge may give such an instruction, "the defendant must be entitled to act in self-defense." *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000). See *Commonwealth* v. *Hinds*, 457 Mass. 83, 91 (2010) (defendant "is not entitled to an instruction on the *excessive* use of force in self-defense where there is no evidence that, at a minimum, the defendant was entitled to use *some* force in self-defense"). "A defendant is entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue." *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980).

The evidence in this case was not sufficient to raise the issue of self-defense because the evidence was clear that the defendant initiated the attack and did not take advantage of every opportunity to avoid combat. Although there was evidence that the victim was walking "hastily" toward the defendant, this movement cannot by itself be construed to have initiated a confrontation or actual combat (see above discussion), and we note that this gesture occurred *after* the defendant verbally accosted the victim for not being able to speak English well. Thereafter, the defendant continued to goad the victim and also threw the first punch. Whether the first punch made contact with the victim is irrelevant; the defendant initiated the verbal and physical attacks, and the victim's act of walking hastily toward the defendant does not create a reasonable doubt to the contrary. Self-defense is generally not available to a defendant who provokes or initiates an attack, such as the defendant did here. See *Commonwealth* v. *Espada, supra* at 693; *Commonwealth* v. *Curtis, supra*; *Commonwealth* v. *Naylor*, 407 Mass. 333, 335 (1990).

Further, there was no evidence that raised a reasonable doubt whether the defendant could have avoided physical combat. See *id.* (person who provokes confrontation may not claim right to self-defense unless he withdraws in good faith and announces his intention to retire). The events took place in the store's parking lot, with ample open space for the defendant to retreat. Both the victim and Gonzalez urged the defendant to leave, but he chose instead to escalate the situation he created. The defendant claims that he could not retreat because the victim fell on top of him while they were fighting. The defendant overlooks what transpired before that moment, and the time he had just to walk away. In these circumstances, the defendant was not entitled to use any force in self-defense because he was the aggressor. See *Commonwealth* v. *Espada, supra* at 694 (because defendant initiated altercation and created circumstances by which he alleged he could not retreat, defendant was not entitled to self-defense instruction). Because there was no evidence of self-defense, it was not erroneous for the judge to refuse to instruct the jury on excessive force in self-defense.

4. *Exclusion of evidence of prior violent conduct by victim.* In *Commonwealth* v. *Adjutant*, 443 Mass. 649, 664 (2005), we

concluded that, "where the identity of the first aggressor is in dispute and the victim has a history of violence . . . the trial judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated, to support the defendant's claim of self-defense." At trial, the defendant moved to admit evidence that the victim had assaulted his wife in an act of domestic violence four months prior to his death. Over the defendant's objection, the judge ruled that the evidence was not admissible because the identity of the first aggressor was not in dispute and that the defendant had no valid self-defense claim because the evidence established that he failed to retreat. In addition, the judge ruled that, even if a dispute existed over the identity of the first aggressor, he would exclude the evidence because its potentially prejudicial impact outweighed its limited probative value. The defendant argues that the judge's rulings amount to prejudicial error. Because the evidence did not raise an issue of self-defense (for the reasons discussed above), we conclude that the judge correctly excluded the evidence of the victim's prior violent conduct. See *Commonwealth* v. *Benoit*, 452 Mass. 212, 227-228 (2008) (judge correctly excluded evidence of victim's prior violence where evidence did not raise issue of self-defense).

5. *Review pursuant to G. L. c. 278, § 33E.* The defendant argues that the court should reduce the verdict to murder in the second degree or to manslaughter because the evidence did not compel a conviction of murder in the first degree on the ground of extreme atrocity or cruelty or alternatively because the weight of the evidence better suggests a verdict of manslaughter. In addition, the defendant points to various factors, including his young age, lack of a criminal record, and the fact that he was under the influence of alcohol at the time of the killing, to request a reduction of the verdict. "[W]e do not sit as a second jury in reviewing cases under G. L. c. 278, § 33E." *Commonwealth* v. *Coonan*, 428 Mass. 823, 831 (1999). The evidence supported the jury's verdict, and the judge correctly instructed the jury on the issue of intoxication, which the jury decided in favor of the Commonwealth. Indeed, this case involves a senseless brawl, but it was a brawl that was initiated, continued, escalated, and afterward celebrated by the defendant, who was fueled not only by alcohol,

but also by animus because the unarmed victim did not speak English well. In view of these circumstances as well as the fact that the defendant stabbed the victim repeatedly and quite viciously, as the stab wound to the victim's testicle was inflicted with such force that it went through the scrotum and into the groin, severing the femoral artery, we conclude that there is no reason to exercise our authority under G. L. c. 278, § 33E.

*Judgment affirmed.*